DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

BENJAMIN KINGSLEY (CABN 314192)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6937
    FAX: (415) 436-7234
    benjamin.kingsley@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br> Plaintiff, </br></br> v. </br></br> CHEN SONG, </br></br> Defendant. | CASE NO. 20-MJ-70968 MAG </br></br> UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION FOR DEFENDANT CHEN SONG |

**INTRODUCTION**

Defendant Chen Song has been arrested and charged on a complaint alleging a violation of 18 U.S.C. § 1546(a), visa fraud. On July 20, 2020, the government moved for detention and defendant proposed release to her aunt, as a custodian or a surety with a $100,000 bond secured by equity in the aunt's home. This Court indicated that it was willing to release defendant with these conditions.

Defendant is an active duty People's Liberation Army ("PLA") military scientist who lied to get into the United States, attempted to destroy evidence, and lied extensively to the FBI when interviewed. For the reasons discussed below, the government respectfully submits that defendant is a serious

GOV'T MEM. IN SUPPORT OF DETENTION

risk of flight and that the proposed conditions are not sufficient to guarantee her appearance in this case.

**FACTUAL BACKGROUND**

The government proffers the below information, some of which is contained in the criminal complaint and some of which is drawn from other sources, to provide a fuller record to the Court of the relevant facts regarding defendant's detention.

*1.     Defendant Song*

As this Court is aware from the complaint, defendant applied for and received a J-1 visa to enter the United States in November 2018, with the stated purpose of conducting research at Stanford University ("Stanford"). On her visa application, under penalty of perjury, she stated that her military service had ended in 2011, when she appears to have graduated from the Fourth Military Medical University ("FMMU"), which is subordinate to the Air Force component of the PLA. She also stated that her employer was Xi Diaoyutai Hospital at No. 30 Fucheng Road in Beijing. On December 23, 2018, she entered the United States on that visa. Once she arrived in the United States, she began work at Stanford, conducting neurological research.

The complaint details evidence that Song is, in fact, a PLA member in the United States on false pretenses. The United States has identified two additional pieces of such evidence beyond that included in the complaint. Specifically, as the complaint explains:

- The FBI has identified from open sources both a photograph of Song in the uniform of the Civilian Cadre of the PLA, and publications in which Song described her institutional affiliation as FMMU or PLA Air Force General Hospital; and

- The FBI recovered a folder deleted from Song's hard drive on June 21, 2020. That folder was titled, in Chinese, "2018 Visiting School Important Information." As described in the complaint, that folder contained a letter addressed from her to the Chinese Consulate in New York, explaining that she was seeking authorization from the PLA Air Force and FMMU to stay in the US and that Beijing Xi Diaoyutai was a false front.

Two additional documents, not described in the complaint, were also recovered from a folder that was also deleted on June 21, 2020:

- An image of defendant's PLA credentials, covering the period July 2016 to July 2020 issued by

GOV'T MEM. IN SUPPORT OF DETENTION

  the Air Force General Hospital Political Department, and including a photograph of her in military uniform and referencing her department as the Air Force General Hospital and rank of Civilian Cadre Level 5; and

  - A resume, which again includes a photograph of her in uniform and lists her employer from September 2011 to the present as the Department of Neurology, Air Force General Hospital.

The government's investigation has revealed several other facts about defendant relevant to her detention or release:

  - Defendant admitted to the FBI that she had reserved multiple one-way tickets to return to China with her daughter with no intention of returning, despite having recently renewed her tenure at Stanford in January 2020 to extent until January 2021;

  - Defendant's aunt, the proposed surety/custodian, informed the FBI that defendant's family in China had a lot of money;

  - Defendant told her aunt, as defendant was being arrested by the FBI, that the embassy would take care of defendant; and

  - The FBI recovered documents from the search, dated from 2018, from "China Construction Bank," indicating holdings of approximately 600,000 yuan, or approximately $85,000.

  *2. Other Cases*

Defendant's case is not an isolated one, but instead appears to be part of a program conducted by the PLA—and specifically, FMMU or associated institutions—to send military scientists to the United States on false pretenses with false covers or false statements about their true employment. There exists evidence in at least one of these cases of a military scientist copying or stealing information from American institutions at the direction of military superiors in China. There additionally exists evidence of the PRC government instructing these individuals to destroy evidence and in coordinating efforts regarding the departure of these individuals from the United States, particularly following the charges filed against Xin Wang in this district on June 7, 2020.

Several other cases, including that of Wang, are described below.

<u>Xin Wang</u>

Xin Wang is a Chinese national who was in the United States on a J-1 visa. On June 7, 2020, he

GOV'T MEM. IN SUPPORT OF DETENTION

was arrested at Los Angeles International Airport ("LAX") while attempting to depart the United States for China. He was charged in this district via criminal complaint and then indictment. Wang was ordered detained in the Central District of California, for transfer to this district. According to the filings in that case, here and in the Central District:

- Wang was a researcher at the University of California, San Francisco ("UCSF");
- His J-1 visa application stated he had been affiliated with FMMU and that his military service in China had ended in 2016;
- In or around May 2020, Wang informed his supervising professor at UCSF that his employer, FMMU, had recalled him and 16 similarly employed colleagues in the United States back to China;
- On June 7, 2020, Wang was interviewed by United States Customs and Border Patrol ("CBP"). In that interview, he made the following statements (in some cases after initially being evasive), among others:
    - He was in fact an active duty member in the PLA, at a level that roughly corresponded with the level of Major in the United States, and employed by FMMU, which is subordinate to the Air Force branch of the PLA;
    - He intentionally lied on his visa application to increase the likelihood of receiving a visa;
    - He was instructed by his supervisor in China, the director of the FMMU lab at which he worked, to observe and document the layout of the UCSF lab to replicate it when he returned to China; and
    - He intentionally deleted all WeChat messaging content from his personal mobile phone before arriving at LAX.
- A review of Wang's devices found studies from UCSF, which Wang said he planned to share with his PLA colleagues, and that Wang had emailed UCSF research to his PLA laboratory.

Juan Tang

Like Wang, Juan Tang is a Chinese national who was in the United States on a J-1 visa. She was charged on June 26, 2020, in a criminal complaint filed in the Eastern District of California in 20-mj-0096 DB, with one violation of 18 U.S.C. § 1546(a). According to the facts in the criminal complaint:

- Tang was a researcher at the University of California, Davis ("UCD");

GOV'T MEM. IN SUPPORT OF DETENTION

3

- Her J-1 visa application stated she had never served in the military, but open source investigation revealed photographs of her in the uniform of the Civilian Cadre of the PLA, and that she had been employed as a researcher at the Air Force Military Medical University, which is another name for FMMU;

- During an interview with FBI agents on June 20, 2020, Tang denied serving in the Chinese military, claimed she did not know the meaning of the insignia on her uniform, and that wearing a military uniform was required for attendance at FMMU because it was a military school; and

- That same day, FBI executed a search warrant at Tang's residence, and a search of her electronic media found further evidence of Tang's PLA affiliation.

The FBI assesses that, at some point following the search and interview of Tang on June 20, 2020, Tang went to the Chinese Consulate in San Francisco, where the FBI assesses she has remained.

L.T.

Like Wang and Tang, L.T. is a Chinese national who was in the United States on a J-1 visa, and was interviewed by CBP at LAX prior to departing the United States—in L.T's case, on July 12, 2020. In the interview, L.T. stated the following facts (in some cases after initially being evasive), among others:

- She was a researcher at Duke University, funded by the China Scholarship Council, who entered the United States in February 2019;

- She was affiliated with the PLA General Hospital and PLA Medical Academy;

- She had been contacted by the Chinese embassy on or around July 4, 2020, and was instructed to visit the Department of Education there. While there, she and four other students met a man they called, "the teacher." L.T. stated that the man spoke to them about how to apply for a visa extension and COVID-19 precautionary measures, and instructed them to delete or reset all their electronic media prior to departing the United States because U.S. Customs officers would be interviewing them before they boarded the plane;

- In July 2020, L.T. spoke with a woman at the Chinese embassy who controlled the China Scholarship Council fund, and who had offered to help L.T. receive a stipend from the scholarship that would pay for her flight back to China; and

- When L.T. arrived at LAX for her department flight, Xiamen Airlines personnel told her that

GOV'T MEM. IN SUPPORT OF DETENTION

4

CBP was going to be interviewing her, and instructed her to wipe her devices. She then used WeChat to call her contact at the embassy, who advised her to stay calm, delete her phone, and answer CBP's questions.

## ARGUMENT

Under 18 U.S.C. § 3142(e)(1), defendant presents a serious risk of flight and there are no conditions or combination of conditions that can assure her appearance in this case in the Northern District of California. She therefore should be detained.

Defendant is a member of the PRC military who gained entry to the United States to engage in scientific research based on intentionally false statements made under oath and penalty of perjury. She operated clandestinely in the United States, along with apparently several (if not more) of her colleagues. As the letter to the New York consulate that she deleted from her hard drive shows, defendant did so with the knowledge and support of her government. She has already demonstrated operational sophistication by deleting incriminating documents from her devices and lying about her affiliation to the FBI.

A PRC military official acting with the support of her government has the resources and ability to flee from the United States regardless of any restrictions this Court could impose. This is true as a general matter, but is underscored by the evidence, stemming from extremely similar cases, of a coordinated and aggressive response of the Chinese government to law enforcement activity by the United States government. Specifically, as the Wang case and the L.T. case demonstrate, the Chinese government has instructed PLA members in the United States to obstruct justice by deleting information from their devices. As this case demonstrates, defendant has, in fact, done just that. As the Tang case demonstrates, the Chinese consulate in San Francisco provides a potential safe harbor for a PLA official intent on avoiding prosecution in the United States. That consulate is located at 1450 Laguna Street in San Francisco, less than a mile from this courthouse, and an approximately 45 minute drive from Newark, California. And as the Wang, Tang, and L.T. cases all demonstrate, the PRC government is intent on protecting its officials from prosecution in the United States. That the FBI has defendant's passport is of no relevance when her own government can easily issue a new one, and when it is up to the airlines to decide whether to require a passport on departure—such as the same PRC-based airlines

that moved Xin Wang and his family off the waitlist or told L.T. to wipe her phone before a CBP interview.

Accordingly, the PRC has demonstrated every reason to assist defendant in fleeing the United States and has at its disposal means such as active consular and intelligence services, the ability to issue passports, and state-controlled air transport. In addition to an obvious interest in securing the return of a PLA officer, defendant's successful flight from the United States would bolster the PRC's information collection activities in the United States, while undermining the ability of the American criminal justice system to deter the illegal conduct of foreign governments in the United States.

As a result, defendant's risk of flight in this case is less about defendant's own personal reasons to stay in the United States as opposed to her government's motive and ability to remove her. However, her ties here are limited. Her daughter is not required to stay, and could leave the United States with defendant at any time. Any funds posted—whether security from her aunt's home or otherwise—can be compensated for by defendant, defendant's purportedly wealthy family, or the Chinese government in many untraceable ways. As a result, $100,000 of security (out of potentially as much as $800,000 in home equity combined between the aunt's home and a rental property jointly owned by the aunt and her son), is inadequate to effectively deter anything on the part of defendant.

Thus, there is a high likelihood that defendant will successfully flee the United States if released on bond and there are no conditions of release that could ensure her appearance in the Northern District of California.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court order defendant detained.

DATED: July 20, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

　　　　/s/　　　　　　　　　　　　　
BENJAMIN KINGSLEY
Assistant United States Attorney