DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

BENJAMIN KINGSLEY (CABN 314192)
Assistant United States Attorney

　　450 Golden Gate Avenue, Box 36055
　　San Francisco, California 94102-3495
　　Telephone: (415) 436-6937
　　FAX: (415) 436-7234
　　benjamin.kingsley@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>CHEN SONG,<br><br>　　　Defendant. | CASE NO. 20-MJ-70968 MAG<br><br>UNITED STATES' MOTION FOR RECONSIDERATION OF RELEASE ORDER AND CONDITIONS<br><br>Hon. Sallie Kim |

**INTRODUCTION**

Defendant Chen Song was arrested and charged on a complaint alleging a violation of 18 U.S.C. § 1546(a), visa fraud. On July 21, 2020, following two days of hearings, this Court released defendant to the custody of her aunt, as a custodian or a surety with a $100,000 bond secured by equity in the aunt's home. Yesterday, government counsel learned that defendant's six-year-old daughter—who was present at defendant's arrest on Saturday, July 18, 2020—was taken out of the United States on a flight out of Los Angeles International Airport to China, that departed the afternoon of Sunday, July 19. This fact was not presented to this Court at the hearings, and is "information . . . that was not known to the

GOV'T MOT. TO RECONSIDER

movant at the time of the hearing . . . that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).  The government respectfully requests a bond hearing at the earliest possible time to reconsider defendant's release.

## FACTUAL BACKGROUND

In addition to the facts proffered at the detention hearings and in the government's memorandum supporting detention, Dkt. 4, the government recounts or proffers the additional following facts.

On July 17, 2020, defendant was charged by criminal complaint.  On July 18, 2020, the FBI executed an arrest warrant at the house of her aunt, Sulan Wang, in Newark, California, where defendant resided with her six-year-old daughter.  Ms. Wang and defendant's daughter were both present at the arrest, and FBI agents gave defendant substantial time to say goodbye to her daughter before defendant was taken into custody.  As part of the arrest, FBI agents coordinated with local law enforcement and child protective services to transfer custody of defendant's daughter to Ms. Wang.  When FBI agents departed the house, at approximately 7:50 am PDT, the daughter was at the house, in the custody of Ms. Wang.  FBI agents also promptly notified the Chinese consulate in San Francisco of defendant's arrest.  The FBI received a response from the consulate that same day, stating the consulate's opposition to defendant's arrest "without breach of any US law and rules" and requesting, among other things, "the early release of her."

According to CBP records, the next day, on July 19, 2020, defendant's daughter departed the United States from LAX on Air China Flight 988.  According to flight tracking history available on the Internet, that flight was scheduled to depart LAX at 2:20 pm PDT that day, actually departed at 3:24pm PDT on July 19, and arrived in Tianjin, China, at 6:49 pm China Standard Time on July 20 (which is 3:49 am PDT on July 20).  Also according to CBP records, defendant's daughter's ticket was booked without any other tickets on the reservation.  It is the government's understanding from CBP that either an adult would have been required to accompany the minor on the flight to China or the airline would have had to agree to escort her for her to travel.

The parties appeared before this Court on the morning of Monday, July 20 and again on Tuesday, July 21.  Ms. Wang was present on Zoom for both hearings.  Though there were problems with the

GOV'T MOT. TO RECONSIDER

translation and communication at the Monday, July 20 hearing, Ms. Wang could clearly hear the proceedings, as she responded during that hearing when the Court asked her to raise her hand in the Zoom meeting. July 20, 2020 Transcript at 9:7–9:10. Following that point in the hearing, and following the government's argument in favor of detention, this Court asked whether defendant's daughter was still present in the United States. Government counsel answered, as it turns out, incorrectly, in the affirmative. Defense counsel did not address the issue. The relevant portion of the transcript is below:

> THE COURT: Doesn't Ms. Song have a child here in the United States as well?
>
> MR. KINGSLEY: She does, but the child is not a U.S. citizen; and other than -- I mean, she may have other family here. Other than her aunt, I don't think -- the child could leave at any time, and we saw that with Jin Wang (phonetic), who was the other case that I charged here for the person arrested at LAX. His family went back to China after he was arrested and detained.
>
> As to whether they would have stayed here if he had been released, I don't know; but the child isn't a U.S. citizen as far as I'm aware and has no reason to be here.
>
> THE COURT: Okay. Ms. Crepet.
>
> I'll hear from Ms. Crepet. Thank you.
>
> MS. CREPET: Yes, Your Honor. I think notwithstanding the Government's representations, we do have a difference in this case, and that is Ms. Song has an aunt with whom she has lived for the past year and a half who's willing to secure the bond and she's willing to secure the bond with her property. That makes an appreciable difference because Ms. Wang is not a person of great resources. She's semi-retired. She now makes about $50,000 a year; and if she is willing to secure a bond with her home, that is a significant deterrent to Ms. Song in escaping her obligation and her court obligations.
>
> In addition, in regard to concerns about Ms. Song fleeing, I'm sure the Government can give the airport a photo and take other measures to try to prevent her from fleeing; and if Ms. Wang is a custodian, she can immediately notify Pretrial Services if Ms. Song is to leave her home.
>
> And I think if there is electronic monitoring in the home and she leaves the home, notification regarding that will be instantaneous and precautions can be taken at the airport to make sure that she doesn't leave the country.

July 20, 2020 Transcript at 13:2–14:9. At no point during the hearing did defense counsel, defendant, or Ms. Wang inform the Court that defendant's daughter was already in China by the time the hearing began.

On the evening of Monday, July 20, the government filed a memorandum supporting detention of defendant. On Tuesday, July 21, defendant appeared again, along with Ms. Wang, who agreed to act as a custodian and a surety, and this Court released defendant with conditions, to the custody of Ms. Wang, on a $100,000 bond secured by the equity in Ms. Wang's home. Again, during this hearing, there was no

GOV'T MOT. TO RECONSIDER
3

1  mention by defense counsel, defendant, or Ms. Wang that defendant's daughter was no longer in the
2  United States. *See generally* July 21, 2020 Transcript.

3  Yesterday, on July 22, 2020, the government obtained CBP records demonstrating that defendant's
4  daughter had departed the United States.

## ARGUMENT

6  Under 18 U.S.C. § 3142(f), "[a] detention hearing may be reopened 'if the judicial officer finds
7  that information exists that was not known to the movant at the time of the hearing and that has a
8  material bearing on the issue whether there are conditions of release that will reasonably assure the
9  appearance of such person as required and the safety of any other person and the community.'"  18
10 U.S.C. § 3142(f).  There are at least three such related facts that warrant revisiting defendant's release
11 and conditions.

12 First, defendant's daughter is no longer in the United States, a fact of which the government and
13 this Court were not aware, and which was almost certainly in the knowledge of the defense at the time of
14 the detention hearing.  This fact is plainly material to defendant's risk of flight; the presence of her
15 daughter in the United State was a mitigating factor (demonstrated by the Court's question at the hearing
16 on July 20) in favor of her release, as it would make it less likely she would flee.  Now with her daughter
17 back in China—where, again, defendant permanently resides with her immediate family and where she
18 is employed as a member of the military—defendant's reasons to remain in the United States during this
19 prosecution are few, and her reasons to leave are many.  It also is relevant to the larger equities relating
20 to defendant's bail, as she is no longer a parent in the United States, who if detained, would be separated
21 from her six-year-old who would be without either of her parents in a foreign country.  Instead,
22 defendant is now a parent in the United States whose child is back in China without her.

23 Second, the facts strongly imply the involvement of the Chinese consulate or government in
24 removing defendant's daughter, as she is a six-year-old who managed to depart the country without a
25 parent or custodian, on a flight leaving from LAX (a five hour and 45 minute drive from Newark
26 without traffic) the next day.  Such an endeavor, particularly without the presence of a parent, almost
27 certainly required consular assistance in getting confirmed seats on a flight and transporting the six-year-
28 old on a twelve-and-a-half hour flight to China.  This fact further confirms the commitment of the

GOV'T MOT. TO RECONSIDER

Chinese government to remove defendant from the United States before her prosecution can be completed.

Third, there are now material concerns about the reliability of Ms. Wang as a custodian for defendant. Defendant's daughter was in the custody of Ms. Wang, who therefore was necessarily aware of and involved in the arrangements to spirit defendant's daughter out of the country—which theoretically could have involved someone taking direction from Chinese government officials, a potential crime under 18 U.S.C. § 951, governing illegal foreign agents. Despite this fact, Ms. Wang, who was present on the video Zoom hearing when government counsel confirmed (inaccurately) the Court's belief that the daughter was still here, volunteered nothing about this fact during either hearing. Ms. Wang's almost certain involvement in the rapid removal of defendant's daughter from the United States, as well as Ms. Wang's failure to speak up and correct the misimpression of the Court and the government at the hearings, raise questions about whether she can serve as an adequate custodian. At a minimum, she should be voir dired about these circumstances, potentially with counsel to advise her about her rights and any potential exposure she may have.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court reconsider defendant's release at a further bail hearing.

DATED: July 23, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

   /s/
BENJAMIN KINGSLEY
Assistant United States Attorney